IN RE ESTATE OF LAWRENCE VOHLAND.
KATHERINE KIRK ET AL., APPELLANTS, V. WALTER VOHLAND,
EXECUTOR, APPELLEE.
280 N. W. 241

FILED JUNE 17, 1938. No. 30368.

*O. A. Drake,* for appellants.

*Minor & Minor, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and
MESSMORE, JJ., and BLACKLEDGE, District Judge.

PAINE, J.

This is an action for an accounting, brought by twelve
heirs of Lawrence Vohland against the executor of his
estate. The district court approved the questioned reports
as right and proper, and set aside the order of the probate
court removing said executor and appointing a successor,
and continued such executor in office. The heirs appealed.

The petition filed in the district court by the twelve heirs,
devisees and legatees under the will of Lawrence Vohland,
alleged that the widow, Mary Vohland, had not been pro-
vided with a comfortable living and all of the comforts of
life to which she was entitled by a son, Walter Vohland,

the executor of said estate; that in the reports filed in the county court by the executor he reported having paid to the widow $4,240, and the petitioners deny that he paid out the same, and further charged that any sums paid out by the executor were paid out without any order or permission of the county court, and were improperly and unlawfully paid out; that the executor failed to charge himself with the proper and reasonable rent for the use of approximately 240 acres of the best land of the estate, which he had been using for eight years, from 1929 to 1936, and that there is due to the estate $1,200 additional rent in addition to that set out in his report; that the executor has allowed the taxes upon the real estate of the estate to become delinquent in a sum in excess of $2,300, and a decree of foreclosure has been rendered in the district court thereon. The prayer of said petition is that the executor be cited before the court and examined under oath, and removed as executor, and some other person appointed to act as administrator, and that upon an accounting the said executor be at once required to pay in the amount due from him, and that he be required to turn over all unadministered assets in said estate, and, if said executor does not pay such sums as found due, that the newly-appointed administrator with will annexed be directed to bring action upon the official bond of such executor.

The executor, for answer to the petition, denies every material fact not admitted; alleges that he is the son of the late Lawrence Vohland, who died November 21, 1928, testate, in Buffalo county. The last will and testament of said deceased is set out in full as a part of the executor's answer.

Such will was executed August 17, 1925, in the presence of Everett L. Randall and John A. Miller, and provides: "I direct that Walter Vohland, my executor, shall keep all of my property together until after the death of my wife, Mary Vohland; that he shall provide for her a comfortable living and all the comforts of life to which she would be entitled, or which she would be provided if I were still liv-

ing, and at her death to provide her with a suitable and respectable burial."

It further provides that after the death of his wife the executor shall sell and convert all of his estate into money, and shall pay to three of the children $300 each, and shall pay to the other nine children, the executor being one of the nine, the sum of $1,000 each, and to the children of a deceased daughter the sum of $1,000, and if any surplus remains of the estate that the executor shall then divide the remainder equally between all of the heirs.

In said answer it is further alleged that the widow has continued to live in the home place since the death of her husband, which home is located on a tract of some 43 acres, the barns and other improvements used in connection therewith being located upon a tract of 185 acres immediately across the road therefrom, and that in this property the widow has a homestead right of 160 acres. In addition to the land above described, there were an additional 160 acres of land belonging to the estate, all of said land lying in Buffalo county.

The answer states that the executor and his family have made a home for the mother in the original family home, and that he has leased such land as he did not use himself, for the usual rentals charged in that vicinity, and has accounted for all of the rentals in his reports; that the widow is 85 years of age, and the executor's wife, Clara, has given every attention by providing the widow with a comfortable home, and has served her meals when and where she desired.

It is further alleged in said answer that defendant has made payments to the widow of the deceased of $4,240 from 1929 to 1936, and that such amounts were reasonable and not excessive in carrying out the terms of the will; that because of drouth and short crops the executor has not been able to pay all of the taxes on the real estate belonging to the estate, but has paid the sum of $900 on such delinquent taxes since this suit was started, and will materially reduce the amount due for unpaid taxes from the rentals;

that the widow has sustained a broken hip as the result of a fall and requires constant attention. The executor therefore prays that the court will find that his discharge as executor by the probate court was wrong, and that the district court will find that he has accounted for all funds of the estate, and has not paid excessive amounts for the care and maintenance of the widow.

To this answer a reply was filed, denying all new matter alleged therein, and setting out facts claimed to be established by the evidence taken in the county court in said litigation.

The plaintiffs set out some seven assignments of error, alleging that the trial court erred in failing to affirm, reverse, or in any manner recognize the order of June 23, 1937, made in the county court, and from which the appeal had been taken. It is charged that the trial court erred in refusing to find that the executor should be removed from office for allowing the taxes to become delinquent, and erred also in crediting the executor with $4,240, claimed to be paid to the widow, without receiving any permission or any order of the county court authorizing the same, and in failing to find that this was sufficient cause for removing the executor, and in finding that the executor was a proper person to continue to act in that capacity; that the trial court erred in construing the terms of the last will, which had not been introduced in evidence before the court. The plaintiffs insist that the reversal of a judgment of the probate court removing an executor does not operate to reinstate the executor, and cite section 30-1412, Comp. St. 1929, as setting out the duties and liabilities of an executor. The plaintiffs also cite section 30-309 and section 30-407, Comp. St. 1929, providing for the grounds of removal when the executor is charged with conversion of the property of an estate.

This case is based largely upon the handling of the funds collected for the estate and the expenditures made by the executor. We have, therefore, examined with some care the eight reports filed.

The executor's first report, filed September 24, 1930, covers the period from December 21, 1928, to the date of the report, and itemized 20 items of receipt, amounting to $3,119.02, and 37 items of expenditure, amounting to $3,108.05, leaving a balance on hand of $10.97.

His second report covers the period from September 21, 1930, to October 13, 1931, and was filed October 19, 1931, and covers 13 items of receipt and $10.97 on hand, making a total of $2,162.03, and itemizes 44 items of expenditure, which with the balance on hand of $32.07 amounts to $2,162.03.

His third report, filed in the county court on December 23, 1932, covers the period from October 14, 1931, to December 22, 1932, and itemizes 13 items of receipt, which amount to $1,461.73, and itemizes 37 items of expenditure, amounting to $1,404.75, leaving a balance on hand of $56.98.

His fourth report to the county court as executor covered the period from December 20, 1932, to September 27, 1933, with 10 items of receipt, which with the $56.98 on hand made a total of $449.54, and he then lists 24 items of expenditure, amounting to $342.46, leaving a balance on hand of $107.08.

The fifth report of the executor to the county court covers the period from September 27, 1933, to October 25, 1934, and was filed on October 26, 1934. It lists nine items of receipt, which with the balance on hand of $107.08 make a total of $1,013.12, and lists 33 items of expenditure, amounting to $758.60, leaving a balance on hand of $254.52. Among the items in this report are several items paid to the Mary Lanning Hospital at Hastings and nurses and doctors for the widow.

In the sixth report, filed by the executor on December 30, 1935, there are listed 12 items of receipt, which with the $254.52 on hand make a total of $1,299.27. There are listed 35 items of expenditure, amounting to $877.39, leaving a balance on hand in the Exchange Bank of Gibbon of $421.88.

The seventh report, filed by the executor on February 10, 1937, covers the period from December 26, 1935, to

January 5, 1937, there being 12 items of receipt, which with the $421.88 balance make a total of $1,592.61, and there is listed an entire page of expenditures, amounting to $844.80, leaving on hand a balance of $747.81.

The eighth report of the executor, which was filed May 19, 1937, covers the period from February 4, 1937, to May 19, 1937, with eight items of receipt, which with the balance of $746.71 make a total of $1,489.12. There are listed twelve items of expenditure, amounting to $286.77, leaving on hand a balance of $1,202.35.

We find attached to each of these eight reports large numbers of vouchers, covering items as small as 15 cents, together with bank checks, bank statements, and receipts, including tax receipts, and while we have not checked each voucher with each line in the report, yet we find that a careful effort has been made to present to the court all of the facts available about every item of receipt and expenditure.

Exhibit No. 40, received in evidence, is the order of the county judge, entered June 23, 1937, setting out the objections made to these eight reports in the county court, and the petition filed by the heirs, and the finding that the executor has filed eight reports and properly charged himself with rentals collected by himself from the land of the estate up to and including the year ending March 1, 1937, to which finding the heirs except. The court further finds that as such executor he has credited himself in such reports with $4,240, exclusive of payment for hospital, doctors, nurses, and medicine, and finding that the executor is entitled to a credit of only $30 a month for the care, support, and maintenance and living expenses of the widow for eight years and seven months, or a total of $3,090, which sum should be credited upon the reports of the executor, leaving an excess of $1,150 credited by the executor, which trust fund has been improperly paid out; that the executor failed to pay the taxes on the property of the estate, and suffered a tax foreclosure decree to be entered, and that the executor is incapable and unsuitable to further act as executor, and should be removed from his trust,

and E. G. Tunks was appointed as administrator with will annexed, and was directed to collect such sums from the former executor, and upon failure to pay the same the said Tunks shall bring action on the official bond of the executor.

We will first consider the question whether the executor had the right to pay to the widow sufficient sums to provide her with a comfortable living, as directed in the will, without applying to the county court for permission to make such payments.

The testimony of the widow herself is of considerable importance in reaching a proper conclusion on this matter. The evidence of Mary Vohland, the widow, was taken in the form of a deposition on October 8, 1937, at her farm home, and she disclosed that they homesteaded a piece of land in 1878, and lived in a sod house at first, and bought an adjoining piece, and she has lived on this farm ever since. She testified that she had been sick a great deal; that she had been in a hospital at Hastings, where she had a cataract taken off from an eye; that she had had kidney trouble for a long time, and had been in a hospital at Kearney and Omaha with that trouble. She testified that she had two little rooms, where she could be by herself when she wanted to be; that she had purchased a radio, and that the expense of keeping up the batteries to run it was considerable, but she enjoyed it; that she goes in and visits the family of Walter, the executor, and his wife Clara whenever she wants to; that she is very happy with her grandchildren there, and the children always treat her nicely, and come to her room and sing in the evening, and she sings to them in German; that she likes all of her children; that she gives her grandchildren money to go to the movies and for other things when she wants to; that she has at times loaned money to Walter and to Clara, and that they have always paid it back.

The widow stated in one answer that she broke her leg not long ago, and that she had to have special nurses in the hospital, and that "they take it pretty easy," but when

they brought her home Clara took care of her and was with her day and night, and was a better nurse, and she insisted in a number of answers that her daughter-in-law, Clara, was "a very good girl" to her and made her very happy. She said that when the others cashed checks for her they brought the money home to her, and that she is sure that she got all of the money; that her son Walter, the executor, as well as her other children, had all been honest children all their lives. She disclosed in her evidence that she is a devout member of the Mormon church; that she has visited the Temple in Utah three times since her husband died. As to the money that she gives the church, she said that the church wants $10 out of every $100, as they just want the tithe.

She insists that her husband said in his will that she was to have a comfortable living, and that is what Walter had given her, although she could not tell just how many dollars he had given her, and her memory failed on ages of her grandchildren and some other matters.

The testimony of the heirs contesting the matter is that the widow is very frugal, and uses very little money for her own living and maintenance. Dorothy Vohland fixes the amount at $5 a week. Bena Zimmerman Lippincott fixes the amount at $3 a week. Katherine Kirk fixes the amount at $3.50 a week. Lulu Winchester fixed the amount at from $4 to $5 a week. Kate Stierley, an entirely disinterested witness, who had lived in the home a couple of weeks, fixed the amount at $4 a week. Nellie Christensen, who was visited by Mary Vohland when on her trips to Utah, testified that the cost of her railroad fare was about the only expense of those trips.

The plaintiffs insist that the executor has used funds of the estate for his own personal benefit; however, the trial court did not find that the evidence supported this charge.

Let us examine the law in relation to the facts of the case.

"Courts may act when trustees abuse their discretion, or act in bad faith, but not otherwise." *In re Raplee's Will*, 160 Misc. 615, 290 N. Y. Supp. 517.

· "Trustees are not entitled to instructions with reference to questions relating to the administration of a trust where trustees are authorized to exercise their discretion with reference thereto." *In re Emmons' Will,* 165 Misc. 192, 300 N. Y. Supp. 580.

"The life beneficiaries are given no power by the terms of the will creating the trust to interfere with the trustee in the administration of its trust, and the law gives them no such power. The manner in which a trustee shall exercise his function rests ordinarily within his discretion. If he exceeds his powers, acts negligently, or abuses his discretion, a beneficiary injured thereby may have redress, but a beneficiary has no power to control the action of the trustee." *City Bank Farmers Trust Co. v. Smith,* 263 N. Y. 292, 189 N. E. 222, 93 A. L. R. 598.

· "Generally, trustee is bound by terms of trust, and equity has no right to authorize trustee to depart therefrom, but equity in its capacity as universal trustee may, for preservation of trust estate, * * * direct trustees to do acts which under terms of trust and ordinary circumstances they would have no power to do." *Seigle v. First Nat. Co.* (1936) 338 Mo. 417, 90 S. W. (2d) 776.

In a very recent decision, rendered by Judge Stone in the United States circuit court for the eighth district on October 5, 1937, *Rollins v. Helvering,* 92 Fed. (2d) 390, it is said:

"Discretion lodged in a trustee is rarely a permit to act arbitrarily, but is usually confined to exercise of judgment not unreasonable in light of purposes of trust and of circumstances in which discretion is to be exercised.

"The power of equity to control administration of trust in accordance with grantor's purposes exists solely for protection of grantor's and beneficiaries' right, and there is no public interest in the matter where parties to trust are purely private parties."

The trial court must have found that the allegation of the plaintiffs in their petition, "That the widow, Mary Vohland, has not been provided with a comfortable living

and all of the comforts of life to which she is entitled or that she would have been provided if the said Lawrence Vohland, deceased, were now living," was not supported by the evidence, for he found all of the payments made by the executor right and proper, and that he should be continued as executor, and that the order of the probate court appointing a successor should be set aside.

In the case at bar, there is no question but what the provisions of the will cited gave the executor unlimited power and discretion to care for the widow in sickness and in health, and it has been said by our court that "Courts are always reluctant to interfere with the exercise of a discretion lodged in a trustee," but, on the other hand, are always ready to correct an abuse of discretion. *Roats v. Roats,* 128 Neb. 194, 258 N. W. 264.

This holding of our court is in line with the discussion of this subject of abuse of discretion found in Restatement, Trusts, sec. 187, comment (e), in which it is said: "The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee."

Finding no prejudicial error in the record, the judgment and decree of the trial court is hereby

AFFIRMED.