Mamie Root et al., Appellees, v. Morning View Ceme-
tery Association, a Corporation, et al., Appellants.

118 N. W. 2d 633

Filed December 7, 1962. No. 35280.

Donald H. Kelley, Wilson & Barlow, and Hollman &
McCarthy, for appellants.

Beatty, Clarke, Murphy, Morgan, Pederson & Piccolo,
for appellees.

Heard before Carter, Messmore, Yeager, Spencer,
Boslaugh, and Brower, JJ.

Yeager, J.

This is an action in equity instituted by Mamie Root,
Genevieve Singleton, Irene Huntington, Florence Mur-

ray, Margaret Cary, Willie Horner, Gertrude Schricker, and Mae Tannehill, nieces and nephew, and heirs at law, of Maria Hughes, deceased, plaintiffs, against Morning View Cemetery Association, a corporation; Walker Kelley, George Gregg, Mabel Rees, Carrie Cowles, Gerald Conneally, and Warren Smith, trustees of the association; and Elsie McGovern, executrix of the estate of Maria Hughes, deceased, defendants. The purpose of the action is to have interpreted and applied a provision of the last will and testament of Maria Hughes, deceased, whereby the residuary estate, except certain designated items of expenditure which do not require mention here, was devised and bequeathed to Morning View Cemetery Association, Lincoln County, Nebraska, in fee simple forever.

The theory on which the plaintiffs' action is predicated is that they are the heirs at law of Maria Hughes, deceased, and as such are entitled to receive to the exclusion of Morning View Cemetery Association all of the residuary estate of Maria Hughes, except $25,000, which amount they contend is the maximum the association is entitled to in the light of law and the facts, under the will.

This theory was defended against by the defendants, who asserted additionally that the plaintiffs were without legal right to maintain the action. These questions will be considered later herein.

The case was tried to the court and at the conclusion of the trial a judgment was rendered, the effect of which, to the extent necessary to state here, was to award $35,000 of the residue of the estate to the Morning View Cemetery Association, and that the balance thereof should be and become a resulting trust for the benefit of the heirs at law of Maria Hughes, deceased.

A joint motion for new trial was filed by all of the defendants except Elsie McGovern, executrix. This defendant filed a separate motion. These motions were overruled. From the judgment and the order over-

ruling the motions for new trial the defendants have appealed.

An outline of the facts, about which there is no substantial dispute, is that Maria Hughes, North Platte, Lincoln County, Nebraska, died September 29, 1959, at North Platte; that she had made a will disposing of her estate; that the will contained 12 specific bequests of $13,303, 100 shares of stock, not valued, and her clothing, personal effects, and jewelry, not valued; that the balance of the estate was declared by the will to be residue and remainder; and that this residue and remainder, after the payment of certain expense items which it is not deemed necessary to enumerate herein, was devised and bequeathed to the defendant Morning View Cemetery Association.

The part of the will providing for the disposition of the residue and remainder of the estate is as follows: "I do hereby give, devise and bequeath unto the Morning View Cemetery Association of Wallace, Lincoln County, Nebraska, all the rest, residue and remainder of my estate of whatsoever description and wheresoever found, both real estate, personal property and mixed property. This gift and bequest is in fee simple forever except that it is subject to the provisions of my Will as hereinbefore set forth and subject to the payment of all the bequests and devises and payment of costs, taxes and expenses as hereinbefore mentioned, and shall consist of whatever is left after all of the above have been satisfied and paid in full." The estimated value of the estate given by the will to the cemetery association was from $260,000 to $270,000.

At the time of the trial there were 5 acres of land in the cemetery. It is located 45 miles southwest from North Platte, Nebraska, 24 miles south of U. S. Highway No. 30, and 2 miles from the village of Wallace. Its existence extends back to 1892. There have been about 87 burials in the cemetery in the past 10 years. A large number of lots are available for sale and use. The popu-

lation of Wallace was, at the time of the trial, about 293, and of the surrounding election precinct about 547. The area for local service extends into two or three adjacent counties. The amount expended for care and upkeep has been but a few hundred dollars a year. Members of the association, however, have contributed other service without compensation. Much more of detail is contained in the bill of exceptions, but this, it is believed, is sufficient to present the general aspect of the area and the basis of the problem presented. This is the purpose of these descriptive features.

By the action here the plaintiffs do not urge that a devise or bequest of the character described is invalid and in consequence should be vacated and set aside entirely. The theory of their pleaded action is to the contrary. They declare that this devise and bequest is valid to the extent of about $25,000.

The action here is to have the court declare the devise and bequest invalid and unlawful on the ground that it exceeds the amount necessary to effect the purposes and perform the services committed to the Morning View Cemetery Association under the statutes enacted for the creation, control, and operation of this and like cemetery associations.

The transcript of the record which came from the district court contains a number of subjects presented there but the basic question on appeal here is limited to that of whether or not the Morning View Cemetery Association, which will be referred to hereinafter as the association, could under law receive and retain the entire bequest and devise given to it by the will.

This question depends in part on the interpretation and application of certain statutory provisions, the pertinent essence of which will follow. It is pointed out here that the validity of none of these provisions is under attack in this case.

Section 12-501, R. R. S. 1943, contains the provisions under which the association was established and under

which it operates and designates the officers. Section 12-502, R. R. S. 1943, contains directions as to the details of organization and the recording of the creation and original legal record of such organizations.

Section 12-506, R. R. S. 1943, provides in part: "Such association shall have the power to purchase or take by gift, devise, * * * and to hold lands, not exceeding three hundred and sixty acres, and improvements thereon, exempt from taxation, execution, or from any appropriation of public purchasers, if the same are used exclusively for cemetery purposes and in nowise with a view to profit. After such land is paid for, all the future receipts and income of such association, whether from the sale of lots, from donations, or otherwise, shall be applied exclusively to laying out, protecting, preserving, and embellishing the cemetery and the avenues leading thereto, to the erection of such building or buildings, vault or vaults, chapel, crematory, mausoleum, and other structures as may be deemed necessary for the cemetery purposes, and to paying the necessary expenses of the association." There is no provision in this section which forbids or prohibits a devise of land to a cemetery association in excess of 360 acres for the purposes of the association. The exemption simply does not apply to the excess over 360 acres.

Section 12-507, R. R. S. 1943, provides: "No debts shall be contracted in anticipation of future receipts except for purchasing, laying out, enclosing and embellishing the grounds and avenues, and erecting buildings, vaults, a chapel, a crematory, a mausoleum and other structures, for which a debt or debts may be contracted, not exceeding eighty-five thousand dollars in the aggregate, to be paid out of future receipts."

Section 12-509, R. R. S. 1943, provides: "Such association shall have the power to establish a fund to be known as the perpetual care fund, placing therein such money as it may from time to time determine, out of its general funds; and it shall have the authority to receive gifts or

bequests of money and other personal property, and devises of real estate and interests therein, to be placed in the perpetual care fund. The principal of the perpetual care fund shall be forever held inviolate as a perpetual trust by said association, and shall be maintained separate and distinct from any other funds. * * * the income earned therefrom shall be used solely for the general care, maintenance and embellishment of the cemetery, and shall be applied in such manner as the association may from time to time determine to be for the best interest of the cemetery."

Sections 12-510 and 12-511, R. R. S. 1943, deal with the subject of specific gifts for special purposes which is of no concern here since the bequest and devise has no relation to the subject of special gifts for particular purposes.

Section 12-518, R. R. S. 1943, contains the following with relation to power: "It shall have power to enclose, improve and adorn the grounds and avenues, and erect buildings for the use of the association; * * *."

It appears proper to indicate here the correct legal characterization of this legacy. From the language of the act of which the foregoing cited provisions are a part the reasonable conclusion is that it is a charitable gift to the association. Section 12-511, R. R. S. 1943, while not declaring this specifically, does declare that gifts for specific purposes, which include all of the generally described functions of such an association as this in the receipt and disposition of money and property received, are classed as charitable and benevolent.

Also, in Rohlff v. German Old People's Home, 143 Neb. 636, 10 N. W. 2d 686, wherein the subject has received exhaustive consideration, it is pointed out that a gift such as this is a gift to a charitable corporation.

In the case of In re Estate of Harrington, 151 Neb. 81, 36 N. W. 2d 577, it was said: "A bequest to a charitable corporation by name, without further restriction or limitation as to use, is in fact not a bequest to the

corporation as such, but to the objects and purposes for which such corporation was organized."

In Allebach v. City of Friend, 118 Neb. 781, 226 N. W. 440, attention has been called to definitions of charity with a conclusion that a legacy such as this is a charitable trust. It must be said therefore that involved here is a charitable gift or legacy.

Returning now to the matter of the right of the plaintiffs to maintain the action, it must be said that they did and do have such a right. The language of the provision of the will makes this clear. It is made clear that no general charitable intent was expressed, and no such intent is inferable, that is, the charitable intent involved extended only to the purposes of the association. The declaration was that this gift was for a particular charitable purpose. In such instance, if the charitable purpose failed the estate would revert to the heirs. In such instance, the heirs would have the right to maintain action to recover the property. See, Rohlff v. German Old People's Home, *supra;* Allebach v. City of Friend, *supra.*

A legacy such as is involved here is a valid disposition of an estate under a will. In Tetschner v. Cram, 157 Neb. 734, 61 N. W. 2d 378, this court said: "A cemetery association organized under Chapter 16, section 45, Comp. St. 1893, is authorized to create a perpetual care fund and to receive property as trustee for the purpose of providing for the care of burial lots, graves, and the like, under sections 12-509 to 12-512, R. S. 1943.

"A bequest of the property of a testator to an existing cemetery association, directing that it be used for the purpose of maintaining its cemetery in proper condition * * * constitutes a valid bequest in trust for the purposes indicated as authorized by section 12-510, R. S. 1943." These statutory sections have the same numerical designation in the 1962 Reissue of Volume I, Revised Statutes of Nebraska, 1943.

The remaining question is that of whether or not

some condition existed at the time of the death of Maria Hughes or came into being thereafter which invalidated the gift in whole or in part. The plaintiffs predicated the action here on the theory that such a condition did at the time and does exist. That theory is that the gift made by the will exceeds the amount reasonably needed to meet the purpose of the gift, and thus is in violation of public policy, and on this account may not be enforced regardless of the desires or intentions of the testatrix.

Obviously the district court accepted this viewpoint and rendered its judgment accordingly, except that it allocated to the purpose of the legacy $35,000, or $10,000 more than the plaintiffs by their petition indicated as a sufficient and necessary amount.

Certain principles have been declared in decisions of this court which have application in the interpretation of the statutory provisions to which reference has been made here. In Benge v. Sutton, 169 Neb. 769, 100 N. W. 2d 857, it was said: "No right of a citizen is more valued than the power to dispose of his property by will. The right is in no manner based upon its judicious exercise." See, also, Reynolds v. Knott, 164 Neb. 365, 82 N. W. 2d 568.

In the case of St. James Orphan Asylum v. Shelby, 60 Neb. 796, 84 N. W. 273, 83 Am. S. R. 553, it was said: "The provisions of a will, like all other contracts, must be construed with a view of carrying out the intention of a testator, and unless there is something in it contrary to the law of the state, or in contravention of public policy, it will not be declared invalid." See, also, Brooks v. Kimball County, 127 Neb. 645, 256 N. W. 501; In re Estate of Vohland, 135 Neb. 77, 280 N. W. 241.

In Reed v. Ringsby, 156 Neb. 33, 54 N. W. 2d 318, it was said: "In the matter of control of discretionary powers of a trustee, the real question is whether it appears that the trustee is acting in that state of mind

in which it was contemplated by the settlor that he should act."

From what is said in the statutory provisions referred to and the cases cited it may not well be said that the gift here is violative of public policy. It is not contrary to any statute, and as to character or quality it is not forbidden by any recognized legal or equitable principle. The only question for determination therefore is that of whether or not on the facts and the controlling principles it may be regarded as excessive for the purpose or purposes intended by the testatrix, and if so, the extent of the excess.

Examination discloses that the gift was, by the terms of the will, for the general purposes of the association and not for any specific or defined cemetery purpose. From this and what has been pointed out it was properly for use in the performance of the lawful purposes and functions of the association. The uses are by virtue of statute determinable by designated representatives of the association. One of the named purposes was to have a general fund, and it appears reasonable to say that a legacy such as this would become a part of the general fund of the association.

Powers of an association such as this include the right to acquire land for cemetery purposes; to apply receipts, income from donations, or otherwise, to laying out, protecting, preserving, and embellishing the cemetery and avenues leading thereto; to erect buildings, vaults, a crematory, a mausoleum, and other structures deemed necessary; to pay necessary expenses; to contract debts in the anticipation of receipts up to $85,000; and to establish a perpetual care fund from gifts and bequests for that purpose and out of the general fund.

The parties are in accord that the value of the estate which would pass to the association by this will would be from about $260,000 to $270,000. The effect of the judgment is that any amount over $35,000 was excessive and that the balance should be and become the property

of the plaintiffs, this amount being all that could be regarded as reasonably necessary for compliance with the purpose and intent of Maria Hughes.

On the record in this case it cannot be ascertained with any degree of accuracy what, if any, excess there will be over the reasonable requirements of this association in the performance of its projected purposes and functions, especially in the light of the intent of the testatrix which has become manifest by the terms of the will.

The record discloses that the total of expenditures for the association for the years 1955 to 1961 inclusive, which included $300 for land acquired, was $2,881.83. In addition to this some members did work on the premises for which they received no pay. It is of course true that this should not be regarded as a measure for guidance for the future by the association in the performance of the functions conferred upon it by statute. It is reasonably inferable that this represented only the current availability of funds.

In arriving at a conclusion as to whether or not this legacy could be applied to the purposes of the association it appears proper to consider elements definitive of the present and the future contemplated purposes.

The association was organized in 1892. There are more than 500 lots in the cemetery. The lots are designed to contain multiple graves. At least 327 lots have been sold. There are approximately 616 marked graves and many which are not marked. About 20 percent of the graves are of residents of Wallace, Nebraska; 30 percent are from elsewhere in Lincoln County, Nebraska; and the balance came from Perkins, Hayes, Gage, and Webster Counties, Nebraska, and from Colorado, California, and Oregon. About 35 relatives of Maria Hughes were buried there.

The record discloses that the association has in prospect the following improvements with their estimated costs: Seeding, $7,786.88; removal of trees, $1,250; equipment, $781; fence, $2,999.50; well, $1,067.50; irriga-

tion well, pump, and motor, $5,317; sprinkler system, $5,721.50; paving, including two new driveways, $28,965; landscaping, $9,244.90; gates, $885; building, $17,600; retaining wall, $14,181; flagpole, $96; furniture and fixtures, $1,610; and memorial, $4,800; all for a total of $102,305.28. These amounts are the result of estimates contained in the record which may depart from accuracy, but it cannot be said that there is a sufficient departure to be of significance here.

The right and power to make expenditures of funds for these purposes is inferable from the language of sections of statute already referred to herein, and it is made definite by the following which is contained in section 12-518, R. R. S. 1943: "It shall have power to enclose, improve and adorn the grounds and avenues, and erect buildings for the use of the association; * * *."

It is to be observed, as has been indicated, that the association is empowered to pledge the credit of the association for its purposes up to $85,000.

It is to be observed further that no estimate of current and continuing cost of operation, further extension of area, and possibly needed additional facilities appears in this, and also in this is not included any item for perpetual care.

It is not suggested that improvements of the character named would not be desirable, but only that there is a lack of necessity therefor and that the estimated cost is excessive.

The substance of the insistence of the plaintiffs is that in the light of the existing conditions, the manner of operation up to the date of the death of Maria Hughes, and the environmental situation, the approval of this legacy cannot be justified beyond the amount of $35,000.

This insistence cannot be accepted as controlling. In the light of the statutes and other authorities cited herein, Maria Hughes had the lawful right to make her will to the extent involved here and to dispose of the estate involved as she did for the purpose indicated. The as-

sociation thereafter by and through its representatives had the discretion to allocate it as it chose and shall choose to the statutorily declared purposes. The amount to which a purpose has been indicated far exceeds the amount which was allocated to the association by the judgment of the district court. There are other purposes to which allocation by the association may be made which are not determined and are not capable of determination. There is nothing of an evidentiary character upon which to base a reasonable conclusion that all of this legacy may not properly and within the meaning of law and equity be used conformable to the intent of the testatrix and the proper powers of the association.

The intent of Maria Hughes by her will obviously was to transform this from just a burying ground, and to create in this community for the years to come a place of serene beauty and utility with funds to keep it lastingly so as a resting place for relatives and friends already departed and others who would follow. This intent cannot and should not be defeated or denied on the basis of a mere showing of earlier years of meager expenses of acquisition, maintenance, and operation.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.