## THE GOLDEN ROD.

(District Court, D. Maine. July 17, 1912.)

### No. 141.

1. EVIDENCE (§ 459*)—PAROL EVIDENCE AFFECTING WRITING—IDENTIFYING PERSONS NAMED IN DEED.

Parol evidence is admissible to identify persons named in a deed, provided it does not tend to vary or contradict the instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1722, 1906–1910, 2109–2114; Dec. Dig. § 459.*]

2. TENANCY IN COMMON (§ 3*)—CREATION BY CONVEYANCE TO UNINCORPORATED ASSOCIATION.

A strip of land extending to the shore on navigable water was conveyed by the owner to the "North Islesboro Wharf Company." Held, that parol evidence was admissible to show that such company was a voluntary unincorporated association which obtained a legislative grant to build a wharf on such land and to identify the members, and that, such proof being made, the conveyance was valid, and vested title to the land in such members as tenants in common.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 5–17; Dec. Dig. § 3.*]

3. VENDOR AND PURCHASER (§ 79*)—CONTRACT TO CONVEY—OPERATION AND EFFECT.

A contract by the owners of wharf property with a third person that, upon the performance by him of certain agreements in respect to building and maintaining a wharf and giving the free use thereof forever as a steamboat landing, they would convey the property to him, did not divest them of their title, in the absence of any evidence that the other party complied with his agreement.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 7, 8, 127–131; Dec. Dig. § 79.*]

In Admiralty. Suit by Fields S. Pendleton against the steamer Golden Rod; Eastern Bay Steamboat Company, claimant. Decree for respondent.

Edward C. Plummer, of Bath, Me., and William H. Gulliver, of Portland, Me., for libelant.

Benjamin Thompson, of Portland, Me., and John R. Dunton, of Belfast, Me., for claimant.

HALE, District Judge. The libelant seeks to recover for wharfage arising from the use of Warren's or "Lime Kiln" wharf in the town of Islesboro in this district. He alleges that the wharf was owned by Eugenia Isaacs of New York City; that on October 16, 1908, she leased the wharf to the libelant, who controls it, and is the exclusive proprietor as lessee of it, and, as such proprietor, is entitled to recover wharfage from all vessels using it; that on the same date, by a valid assignment, she set over to the libelant all claims up to that date, for use of the wharf, against all persons, associations, and corporations, including a claim against the claimant's steamer Golden Rod; that on April 15, 1906, and during each succeeding month up to the date of the libel, December 4, 1909, the steamer Golden Rod, while in prosecution of her trips, stopped at

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the wharf, receiving and landing passengers; that for such use of the wharf the steamer agreed to pay a reasonable compensation; that the libelant is entitled to recover wharfage at the rate of $2.50 per landing; and that there is due the libelant as proprietor and assignee, for such use of this wharf, $7,280.

The claimant denies that the libelant was the proprietor of Warren's landing; or that the wharf was owned by Eugenia Isaacs; or that it was a private wharf; or that it was wholly maintained by the libelant; or that he, as lessee, was the proprietor of it; or that as such proprietor he is entitled to recover wharfage from vessels using it; or that, by virtue of the lease, he acquired any rights in the wharf, or, by virtue of the assignment, acquired any claim against the Golden Rod. The controversy, then, relates to the ownership of Warren's wharf; the libelant seeking to recover wharfage, on the ground that for a part of the period named in the libel he was the lessee of it, and, as to the rest of the period, he had taken an assignment from Eugenia Isaacs, the owner and lessor, of her claim for wharfage.

The claimant further says that neither the libelant nor his lessor was ever the owner of any part of Warren's wharf; that on January 7, 1889, George Warren, a son of Samuel Warren, gave a warranty deed to the North Islesboro Wharf Company of a lot of land extending from the main road across his field, to a point on the shore where a wooden pier was then located, which had been placed there by parties who contemplated the building of a wharf at that point. It is also contended on the part of the claimant that the North Islesboro Wharf Company was a voluntary association, never incorporated; but that the deed from George Warren operated to vest the title of the real estate in the persons constituting the Wharf Company, as tenants in common; that Warren's wharf was built off the shore of such real estate, under the terms of a legislative grant held by the Wharf Company; that it was constructed by one L. S. Whitten, who was in charge of the lime property, located in that vicinity, then under lease to William N. Hoag, and under a contract with the Wharf Company.

The libelant's title to the wharf comes, as has been said, through Eugenia Isaacs, whose title was derived by mesne conveyances from Case and Ulmer, who got their title by warranty deed from George Warren, May 7, 1889. The claimant denies that any title to the wharf was obtained by this deed, and sets up that the title had already passed from George Warren to the North Islesboro Wharf Company by the deed of January 7, 1889, recorded April 15, 1889. The libelant says that the deed from Warren to the North Islesboro Wharf Company was not a valid conveyance, and did not vest the title to the real estate in the North Islesboro Wharf Company, for the reason that there was no legal grantee in the deed. He contends that, at the time of the delivery of the deed, there were in existence no well-ascertained persons constituting the "North Islesboro Wharf Company." And the libelant sharply contends that the court cannot receive parol testimony to identify the members constituting the North Islesboro Wharf Company.

1. Was the deed from Warren to the Wharf Company a valid deed? This is the main point of contention in the case. A deed is offered dated January 7, 1889, from George Warren to the North Islesboro Wharf Company, "their heirs and assigns forever." At the end of the description are the words:

"Meaning to convey to said Wharf Company a piece of land from the town road to said company's wharf one and one-half rods wide to be used as a road, also meaning to convey one and one-half rods at the north of said wharf, and one and one-half rods at the south of said wharf to be used by said Wharf Company."

Certain testimony was offered tending to identify the persons constituting the Wharf Company. A special act of the Legislature of the state of Maine, approved on the 23d day of February, 1889 (Laws 1889, c. 422), authorizing the North Islesboro Wharf Company to erect and maintain a wharf in front of the land of Samuel Warren, was also offered; also, evidence tending to show the holding of meetings by the members of the so-called company; and the application to the Legislature by the same persons for permission to erect the wharf in question.

[1] While parol evidence is not received to contradict or vary the terms of a written instrument, courts often receive parol evidence to identify persons named in a deed, providing such evidence does not tend to vary and contradict the instrument, but to ascertain the true grantee. In this way courts are often aided in finding the grantee, in cases where something is found in the grant, connected with the parol testimony, from which the grantee may be ascertained. Andrews v. Dyer, 81 Me. 104, 106, 16 Atl. 405; Jacobs v. Benson, 39 Me. 132, 134, 63 Am. Dec. 609; Hall v. Leonard, 1 Pick. (Mass.) 27, 30; Hall v. Tufts, 18 Pick. (Mass.) 455. In Byam v. Bickford, 140 Mass. 31, 2 N. E. 687, the plaintiff and the defendant were both members of a voluntary unincorporated association known as the "South Chelmsford Hall Associates." It was conceded that the deed was intended for the "South Chelmsford Hall Association." The grantee was found to be a voluntary unincorporated association, all the members of which could be ascertained, but which was not one of the class authorized by the statutes to take and hold real estate; and it was held that a deed to such association may be construed as a grant to those who are properly described by the title used in the deed; and such persons are tenants in common of the land conveyed. In speaking for the court, Mr. Justice Devens said:

"The South Chelmsford Hall Association was a body well known, all the members of which could be ascertained; and, as it could not take as a corporation, the deed may properly be construed as a grant of the estate to those who were properly described by this title, especially as the grant is to the 'Associates,' a term deemed by the grantors to mean the same as 'Association.' The persons associated in the society were thus tenants in common of the land conveyed."

[2] In the case before me, I can have no question but that the testimony offered is material and admissible, to determine to whom the deed was intended, and to identify the persons who constitute the North Islesboro Wharf Company. Upon this subject, testimony

is before the court that George Warren made the deed to which I have already alluded, on January 7, 1889, to the North Islesboro Wharf Company; that 11 persons composed the Wharf Company, namely, Joseph L. Coombs, Robert Coombs, Millard Parker, Phillip O. Coombs, Austin Wymen, Austin Trim, George Warren, John Yeaton, Augustine Parker, Alonzo Wyman, and James Richards; and that these members were well known at the time of the Warren deed, and at the time of the legislative grant. The testimony tended to bring home to the libelant's predecessors in title the knowledge that these 11 persons constituted the members of the Wharf Company, and were the owners of the real estate described in the deed from Warren to the Wharf Company. For the purpose of showing the identity of the parties constituting the Wharf Company, the so-called Whitten contract has been offered, under which the members of the Wharf Company agreed with one Hoag, represented by L. S. Whitten, that upon the performance by Hoag of certain agreements in reference to building and maintaining a wharf, and giving the free use thereof forever as a steamboat landing, the members of the so-called Wharf Company were to convey all rights acquired of Warren. and also the materials which they had got together for the building of the wharf; they were also to transfer to Hoag the right acquired by them under the special act of the Legislature referred to. This contract was signed by the agent of the 11 persons who are claimed to constitute the Wharf Company, and who, it is claimed, were thereby recognized as the grantees in the deed to the Wharf Company; and also as the persons who owned the materials gotten together to build the wharf, and the persons to whom the legislative grant belonged. In the opinion of the court, this contract has great probative force in establishing the identity of the members constituting the Wharf Company. The testimony fails to show any claim that the 11 men in question did not constitute the Wharf Company, or that anybody else was interested in the matter. There is no evidence to contradict the testimony that, since the Lime Company ceased to occupy the wharf, it has always been in the possession of the Wharf Company without any question of their right, until the libelant acquired the lease from Mrs. Isaacs. The whole testimony leads me to the conclusion that the deed from Warren to the Wharf Company was a valid conveyance; but whether it conveyed the entire fee of the property therein referred to, or only an easement over the land described therein for the purpose of a road, it is unnecessary for the purposes of this case to determine. The subsequent deed from Warren to Ulmer and Case, the predecessors in title of Mrs. Isaacs, was intended to convey such lands as remained in Warren after he had made the conveyance to the Wharf Company; and it is clear that Whitten, the agent of Hoag, had knowledge of the deed from Warren to the Wharf Company prior to the time of the building of the wharf. The mesne conveyances, and the final conveyance to Eugenia Isaacs, did not convey title to her of the wharf company; for a valid title to this property had already vested in the members of the Wharf Company, as tenants in common under the Warren deed.

[3] 2. The libelant further contends that, if the court holds that the members of the Wharf Company took title as tenants in common under the Warren deed, even then, they parted with their title when they executed their contract with Whitten, because equity treats as done what ought to be done.

It is sufficient to say that the court cannot sustain this contention. The substance of the Whitten contract has already been given. There is no pretense that Whitten, or Hoag as his principal, have ever carried out their part of the contract; and it certainly could not have been the intention of the parties that the members of the Wharf Company should, by the contract, part with their title, or with other rights in the property, without the fulfillment of the contract on the part of Hoag. It therefore becomes unnecessary to consider the effect of the terms of that contract with respect to the dedication to the public of the wharf as a free steamboat landing forever.

Upon the whole testimony, the court finds that the libelant was not the owner of the wharf in question, and had no rights as proprietor of the wharf, or as the assignee of Eugenia Isaacs, upon which to base the claim set out in the libel.

The libel is dismissed, with costs.