In the Matter of the Estate of SARAH C. PATTERSON, Deceased.

Surrogate's Court, Kings County, April 7, 1931.

*Connolly & Frey* [*Edward J. Connolly* of counsel], for the executor.

*Louis H. Pink*, for Brooklyn Parks and Playgrounds Committee, legatee.

*Merrill, Rogers, Gifford & Woody*, for the Brooklyn Navy Young Men's Christian Association and the International Committee of Young Men's Christian Association, legatees.

*Coombs & Wilson*, for the Brooklyn and Queens Young Men's Christian Association and Industrial Home for the Blind, legatees.

*Cullen & Dykman*, for Brooklyn Society for the Prevention of Cruelty to Children, legatee.

*Wood, Cooke & Seitz*, for Young Women's Christian Association of Brooklyn, legatee.

*William H. Stryker*, special guardian for Marcia Childs, an infant.

*Taft & Sherman*, for American Seamen's Friend Society, legatee.

WINGATE, S. For exceeding half a millenium the ecclesiastical courts, and their successors, the chancellors and courts of equity, have perennially asseverated the powers of courts of equity jurisdiction to ameliorate the acerbities of common-law substantive rules and procedure, to pierce and eliminate formalism and fiction, and accomplish even-handed justice.

During an almost equal period, probate courts, whether *nisi prius* or appellate, have enunciated as supreme the principle that

the basic criterion of testamentary construction was the expressed intention of the testator.

Despite the innumerable repetitions of these laudable professions, this court would be compelled to defeat the obvious wishes of the testatrix whose will is now at bar were it not for the comparatively recent invention of a fiction whose artificiality would be evident to the least informed layman. The reason for this anomaly is the persistence in the law of the doctrine that an unincorporated association, no matter how long and how successfully it may have conducted its affairs, is incapable of taking and holding personal property. (*Downing* v. *Marshall*, 23 N. Y. 366, 382; *Sherwood* v. *American Bible Society*, 1 Keyes, 561, 566, 567; *White* v. *Howard*, 46 N. Y. 144, 160; *Fralick* v. *Lyford*, 107 App. Div. 543, 546, 547; *Ely* v. *Megie*, 219 N. Y. 112, 143.) To state that this rule of law is contrary to all modern human experience is to enunciate a truism familiar to almost every member of a church, fraternal organization, club or other of the multitudinous organizations of present-day existence. To say that such an association cannot take and use personalty would be met with amused incredulity by any member of the community, particularly by one who had been expelled from membership because of failure to make payments to such an organization. To solemnly adjudicate that a payment to such an association an hour or a moment before death is valid and confers a good title, while a similar payment at death — which may be an hour or a moment later — is ineffective is the variety of judicial absurdity which tends to increase the growing impatience of the general public with the frequently evident eccentricities of laws as enunciated by the courts.

The facts which give rise to this application are as follows:

By the 4th item of her will the present testatrix provided in part: " I give and bequeath * * * to the Brooklyn Society for Parks and Playgrounds for Children the sum of Five thousand ($5000) dollars."

Evidence adduced upon a hearing before the court shows that a membership corporation of this name was duly organized in 1890 and has apparently never been formally dissolved. Some time prior to 1911 it became defunct, following the death of the majority of its incorporators. Its work was taken over about the year 1911 by an unincorporated voluntary association known as the Brooklyn Parks and Playgrounds Committee, in which some of the persons interested in the former corporation became active. This is now the only organization doing a general work in support of playgrounds in the borough of Brooklyn. Beginning on April 4, 1912, and continuing up to almost the time of her death, this decedent

made annual contributions to the work of this committee, one of whose playgrounds was located four short blocks away from her residence.

The first question presented concerns the identity of the intended legatee. As a result of the testimony adduced this is readily determinable. Testatrix's own actions demonstrate that she intended it for the Brooklyn Parks and Playgrounds Committee, the unincorporated association which has been cited in this proceeding and in whose affairs she had demonstrated her interest by regular personal contributions during each of the last seventeen years of her life, and not for the defunct corporation which had ceased its operations a generation or so before. The name inserted in the will was clearly a misnomer, and " it is well settled that in such case a legacy will not be defeated by a misnomer." ( *Kernochan* v. *Farmers' Loan & Trust Co.,* 187 App. Div. 668, 672; affd., 227 N. Y. 658; *Manley* v. *Fiske,* 139 App. Div. 665; affd., 201 N. Y. 546; *Matter of Durbrow,* 245 id. 469.)

All of this testimony respecting the Brooklyn Parks and Playgrounds Committee, and the interest of the testatrix in its organization and work, was received subject to the objection of the special guardian of its inadmissibility.

Under the old rule it is quite possible that the court might have been obliged to ·rule that this objection was valid, but it is now well established that, " ' with the exception of direct statements of intention, no extrinsic fact relevant to any legitimate question arising in the interpretation of writings and admissible under the general rules of evidence,' can be shut out." (*Matter of Smith,* 254 N. Y. 283, 289; *Matter of Shumway,* 138 Misc. 429, 432.)

The final question in the case concerns the powers and obligations of the court in the effectuation of this testamentary gift.

In *Matter of Kelley* (138 Misc. 190) this court had recent occasion to examine the development of the *cy pres* doctrine in the State of New York (See, also, *Matter of McLoghlin,* 139 Misc. 202, 204; *Matter of Winburn,* Id. 5), and there is no present occasion for its repetition. Suffice it to note that the present rule, as enunciated by the Court of Appeals in affirming the decision of this court in *Matter of Durbrow* (245 N. Y. 469) stated (at p. 474), is: " If * * * a definite charitable purpose may be found within the limits of a testator's language; * * * his language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld."

The gift here in question is in terms an outright bequest. Here, however, the rule above noted is encountered, that an unincorporated association cannot take a direct bequest. While this

archaic principle has not been directly overruled, its effect in a case of this type has been circumvented by implying a trust and determining that such trust vests in the Supreme Court. (*Matter of Durbrow*, 245 N. Y. 469, 477; *Matter of Winburn*, 139 Misc. 5, 8; *Manley* v. *Fiske*, 139 App. Div. 665, 667; affd., 201 N. Y. 546.)

In the last-cited case the following language, quoted in part with approval by the Court of Appeals in the *Durbrow* case (at p. 477), is found (at p. 667): " It is true that there are no express words creating a trust, as there are no express words of gift; but it is quite plain that a trust was intended. A trust is almost inseparably involved with a gift for charitable uses, and the statute provides for the case of a failure to select a trustee as well as for the case of indefiniteness of beneficiary. In case no trustee is named the title vests in the Supreme Court."

Following this suggestion, this court determines in the present case that a valid charitable trust has been constituted by the bequest in question, leaving to the Supreme Court the appointment of a trustee for the effecting of the general purposes of the bequest and the intention of the testatrix.

The result and the future mechanics of operation are, therefore, four square with those in *Matter of Winburn* (139 Misc. 5), in which Surrogate SLATER said (at p. 9): " The evidence sufficiently indicates the religious and charitable purpose to which decedent desired to apply his bequest, and enables the Supreme Court, under the power derived from the statute [Pers. Prop. Law, § 12], to administer it as a trust for which a trustee is not named. This can be done through the instrumentality of a trustee appointed by the Supreme Court. If such course is deemed wise, the Supreme Court will doubtless be influenced in the choice of a trustee by the nature of the charity to be administered and may well appoint " the particular beneficiary named in the bequest.

While this result will no doubt effectuate testatrix's wishes, it cannot be other than regrettable that courts should be compelled to resort to such substantial circumvention of outworn rules of law. The remedy, however, is beyond the power of a court of first impression and lies with the Court of Appeals or the Legislature.

Proceed accordingly.