Bailey et al., Admrs., Appellants, *v.* McElroy, Atty. Genl., et al., Appellees.

(No. 260—Decided June 24, 1963.)

Messrs. *Young & Jones* and *Mr. C. Donald Dilatush*, for appellants.

Mr. *Harry Z. Gray* and *Mr. Philip J. Schneider*, for appellee.

HILDEBRANT, J. This is an appeal from the judgment of the Probate Court of Warren County construing the will of Rice P. Steddom, deceased, and specifically the language contained in paragraph three of the will, and the succeeding paragraphs headed First Purpose, Second Purpose, Third Purpose and Fourth Purpose. The entire will is quoted, as follows:

"I, Rice P. Steddom, of Lebanon, Warren County, Ohio, being of sound and disposing mind, memory and understanding, and mindful of the uncertainty of life, do make, publish and declare the following as and for my last will and testament, hereby revoking any and all former wills by me at any time heretofore made.

"I will and direct the prompt payment of all my just debts and funeral expenses and that immediately after said payment is accomplished all of my property, real, personal and mixed, shall be placed and thereafter held in trust where said property, and the income therefrom, will be judiciously and wisely administered, and the said income promptly disbursed to my sister Laura S. Dunham of Lebanon, Ohio, and my brother Francis W. Steddom of Los Angeles, Cal., each said sister and said brother sharing alike in said income so long as both shall live, and in the event of the death of either said sister or said brother, then and thereafter the entire income from said property shall go to the survivor, either said sister or said brother, so long as she or he shall live.

"Upon the death of both said sister and said brother, then and thereafter the entire income from said property shall be expended for the purposes and in the order of preference as follows:

"*First Purpose*: In perpetuating, caring for and beautifying the Turtle Creek Graveyard in Turtle Creek Township, Warren County, Ohio, and any enlargement thereof, in memory of those who are buried there and for the benefit of succeeding generations.

"*Second Purpose*: In preserving the Turtle Creek Meeting House and beautifying the grounds thereof adjoining the said Turtle Creek Graveyard as an adjunct to the First Purpose above cited.

"*Third Purpose*: In keeping in repair, preserving and improving the buildings and land of the 42.54 acres located in

Warren County, Turtle Creek Township, Ohio, now recorded in my name, and assessed as Lot or Survey 448 and known as the Home Place, as an adjunct to the Fourth Purpose below stated.

"*Fourth Purpose*: After the First, Second and Third Purposes as above stated are accomplished for the year which is then current, or if for any lawful reason any one or more of said purposes cannot be so accomplished, then and in that event all remaining income from said property for said year shall be expended in helping to educate worthy young men and/or worthy young women in veterinary science and/or general sanitation. The applicants as beneficiaries under the provisions of this Fourth Purpose shall be selected in the order of nearness of their legal residence to the said Home Place.

"The said property and the income derived therefrom shall be designated and ever known as the Narcissa Price Steddom Fund in memory of my mother.

"It is my wish that the court having jurisdiction shall duly designate the trust organization which shall act as administrator and trustee of my estate.

"In witness whereof, I have hereunto set my hand and seal at Washington, District of Columbia, and acknowledged, published and declared this to be my last will and testament on this the twenty-fourth day of January, in the Year of Our Lord, one thousand nine hundred and thirty.

"/s/   Rice P. Steddom."

Two separate documents, denominated codicils, are involved in the record of this case, and we quote each, as follows:

## Codicil No. 1.

"I,                    of Lebanon, Warren County, Ohio, do hereby make, publish, and declare this as a first codicil to my last will and testament dated January 24, 1930.

"Item I.   I direct that my body shall be cremated and the ashes buried beside the grave of my wife in Turtle Creek Graveyard in Turtle Creek Township, Warren County, Ohio, and that a granite marker be erected over my ashes, which marker shall bear my name, 'Rice Price Steddom,' and the year of my death.

"Item II.   I bequeath to Pearl and Emmor Baily the sum of five thousand ($5000) dollars in recognition of services

rendered me during my life, and, if either should die prior to my death, said sum shall be paid to the survivor.

"Item III. I hereby direct that my trustee herein named shall acquire title to the Turtle Creek Meeting House, provided the same can be purchased at a price that seems reasonable to my trustee and to pay for the same out of the principal of the trust estate; and I further direct that said Turtle Creek Meeting House and the farm described in my will shall be maintained as a public park, in order to preserve said meeting house for historic purposes, with the understanding that the house on said farm, together with the other farm buildings adjoining the house, and a tract not to exceed five (5) acres, shall be fenced off and used as a residence by the caretaker who will from time to time be employed by my said trustee to care for the park and meeting house. I further direct that my said trustee may, as soon after my death as it deems it advisable, use a sum, not exceeding fifteen thousand ($15,000) dollars, from the principal of the trust estate for the purpose of placing the meeting house, the farm, and the buildings on the farm in first-class condition and well fitted for use as a public park.

"Item IV. In view of the fact that my sister, Laura S. Dunham, and my brother, Francis W. Steddom, are both deceased, I hereby revoke that part of my will which bequeaths to them the income of the trust estate during their lives and the life of the survivor of them.

"Item V. I hereby appoint The Fifth Third Union Trust Company, of Cincinnati, Ohio, as trustee to carry out and execute the trusts set forth in my will as amended hereby; and I direct that it shall not be required to give bond to secure the faithful performance of its duties as such trustee. I hereby give and grant to my said trustee full power and authority to sell, transfer, or exchange all or any part of the property at any time held by it hereunder at such prices and upon such terms and conditions and in such manner as it may deem best; to execute and deliver any contracts, conveyances, leases, agreements, proxies, powers of attorney, or other instruments in writing that my said trustee may deem necessary or advisable in administering said estate; to invest and reinvest money coming into its hands in such loans, stocks, securities, or ground rents as it may deem proper and suitable for the investment

of trust funds, irrespective of any statutes or rules or practices of chancery courts now or hereafter in force limiting the investments of trust companies or trustees generally, with power to vary or transpose investments so made into others of like or similar nature, it being my intent that my said trustee shall have unrestricted power to manage all the property held by it hereunder as if the absolute owner thereof. I further direct that in case of sales made by my said trustee hereunder, the purchaser shall not be required or concerned to inquire as to the disposition of the proceeds, but shall be fully released by receipt signed by my said trustee, and all powers granted my trustee shall be exercised by it without any order of court.

"Item VI. I hereby nominate and appoint The Fifth Third Union Trust Company, of Cincinnati, Ohio, as executor of my last will and testament as herein supplemented, and direct that it shall not be required to give bond to secure the faithful performance of its duties as such executor; and I hereby give and grant unto my said executor, all and singular, the powers and privileges hereinbefore given and granted to my said trustee.

"In witness whereof, I have hereunto set my hand, at Lebanon, Ohio, on this 8th day of August, 1945.

"........................

"Signed by the said             who at the same time published and declared the same as and for a codicil to his last will and testament dated January 24, 1930, in the presence of us, who, in his presence and in the presence of each other, and at his request, have hereunto subscribed our names as witnesses, at Lebanon, Ohio, this 8th day of August, 1945.

"[s]              residing at    Lebanon, Ohio
"[s]              residing at    Lebanon, Ohio
"[s]              residing at    Lebanon, Ohio."

Codicil No. 2 (marked exhibit "B").

"In the emergency of my sudden illness a first codicil to my last will was drawn and signed on the eighth day of August, 1945. Since said emergency has passed and it is now my wish to dispose of property in a manner differing from the terms of said codicil, I hereby declare said codicil to be null and void.

"[s] Rice P. Steddom

"Signed by Rice P. Steddom in our presence and signed by us as witnesses at his request, in his presence and in the presence of each other at Summit Farm, Lebanon, Ohio, on July 20, 1946.

"[s] B. B. Ellenberger, 1359 Parkwood Place N. W.,
Washington, D. C.

"[s] Mrs. S. B. Butz, 4240 Fergus Street, Cincinnati, Ohio

"[s] Grover Sibler, 1624 Clarewood Avenue, Cincinnati, Ohio."

In order to understand the problem of decision confronting this court, we find it expedient to narrate the chronology of events, as disclosed by the transcript of docket and journal entries making up the record of the probate proceedings herein and the narrative bill of exceptions as allowed and certified by the Probate Court and as set forth in the opinion of the probate judge, attached to the record.

Rice P. Steddom died on December 20, 1949, a resident of Warren County, Ohio, and, his sister and brother having predeceased him, left only as next of kin and heir at law a grandnephew, Francis T. McCurdy, appellee herein, a resident of Anchorage, Alaska, at the time.

On December 31, 1949, the will was filed and application to admit it to probate made in the Warren County Probate Court. At the same time, the two documents denominated codicils were left with the court.

Subsequently, appellee herein, through counsel, opposed the probate of the will, relying on the document denominated Codicil No. 1, specifically revoked by the document denominated Codicil No. 2, as reflecting on the burden resting on the proponents to offer proof that the will was the *last* will of Dr. Steddom. The question was briefed by both sides and was argued and submitted to the court, whose finding was that the will offered was the last will and testament of Rice P. Steddom, deceased, and, on April 6, 1950, the will was admitted to probate and record.

By that action, the court rejected the claims of the opponents to the probate of the will and refused, *sua sponte*, probate of the so-called Codicils Nos. 1 and 2, and its action is tantamount to a finding that the document denominated Codicil No. 1 did not revoke the will or have any effect thereon, nor

did the so-called Codicils Nos. 1 and 2 have any efficacy whatsoever testamentary in character.

We quote now from the narrative bill of exceptions:

"On October 18, 1950, an action, being case No. 19075, was filed in the Warren County Common Pleas Court by Francis T. McCurdy to contest the above mentioned will.

"On October 19, 1950, a sceond action, being case No. 19076, was filed in the Warren County Common Pleas Court by the said Francis T. McCurdy to construe the above mentioned will.

"Thereafter, on October 13, 1955, an application was filed in the Probate Court of Warren County, Ohio, seeking permission to compromise both of the above described actions, namely: Case No. 19075 and case No. 19076; and by entry in said court under same date, permission was granted so to do, and the co-administrators were authorized and directed to pay the sum of $50,000 in cash to said Francis T. McCurdy for which the said Francis T. McCurdy released in writing all of any 'interest he might claim in the estate of Rice P. Steddom.' On the same date, October 13, 1955, the action to construe said will was dismissed with prejudice to the filing of another similar action by Francis T. McCurdy, and in the action to contest the will, which had been submitted to a jury, the jury found that said paper writing was the last will and testament of Rice P. Steddom, deceased."

At this point, we set forth the release in writing, in full:

"Know all men by these presents, that I, Francis T. McCurdy, of Dayton, Ohio, in consideration of the sum of fifty thousand ($50,000) dollars paid to me by the estate of Rice P. Steddom, deceased, of Warren County, Ohio, the receipt of which is hereby acknowledged, do hereby release and forever discharge the estate of Rice P. Steddom from all inheritance rights, causes of action as an heir at law, distributee or any other right or claim of whatsoever kind or nature, it being distinctly understood that this release is a complete and final discharge of the estate of Rice P. Steddom.

"In witness whereof, I have hereunto set my hand on this 13 day of October, 1955.

"[s] Francis T. McCurdy."

We now continue with quotation from the narrative bill of exceptions:

"On April 25, 1961, counsel for co-administrators filed an action in the Warren County Probate Court in which they 'pray for judgment and direction of the court in regard to the true construction of said clauses in said will, and as to their duties in the premises,'; said clauses being specifically so-called paragraphs headed as 'First Purpose, Second Purpose, Third Purpose, and Fourth Purpose.' This action included the Attorney General of the state of Ohio as a party defendant. On June 17, 1961, appellee filed a motion seeking to dismiss the Attorney General as a party to said suit; on July 25, 1961, the Probate Court sustained said motion; on August 4, 1961, the Attorney General of the state of Ohio appealed to the Court of Appeals; and on March 8, 1962, the Court of Appeals sustained the action of the Probate Court, dismissing the Attorney General as a party to this action.

"A hearing was then had in open court on the petition to construe said will and briefs submitted to the court.

"The Warren County Probate Court rendered its opinion in which said court found that the first codicil mentioned herein was in fact a second will and acted to revoke the said first will, and the instrument called a Second Codicil acted to revoke the First Codicil or second will, although neither codicil was filed or probated, although they were on file with the other estate papers in the Probate Court, and that as a result of the above findings, the said Rice P. Steddom died intestate.

"The court further found that as a result of the above, the releases given by Francis T. McCurdy for which he received $50,000, were invalid and not binding upon the said Francis T. McCurdy, and the co-administrators were then ordered to pay the residue of said estate to the said Francis T. McCurdy as the only heir at law and next of kin.

"It is from this decision that this appeal has been filed.

"The court further finds that after the filing of the narrative bill of exceptions of appellants by counsel for co-administrators and the filing of the objections and proposed amendments to narrative bill of exceptions filed by plaintiffs by counsel for appellee, Francis T. McCurdy, namely: on November 2, 1962, the said Francis T. McCurdy, through his counsel, filed

an application for the probate of first codicil (or second will) and second codicil, and on same date, hearing was set on said matter on the 9th day of November, 1962, and notices ordered. Upon oral application of counsel for co-administrators, hearing was continued until November 13, 1962, at which time, the first codicil (or second will) and second codicil were admitted to probate and record, to which proceeding, counsel for Emmor D. Baily and Charles J. Waggoner, co-administrators with the will annexed of the estate of Rice P. Steddom, deceased, excepted.''

An action to construe a will is to be distinguished from an action to contest a will, as stated in 56 Ohio Jurisprudence (2d), 215, Sections 689 and 691:

''An action to construe a will is essentially different from an action to contest its validity. In the former the court assumes the validity of the will and seeks to ascertain the intention of the testator as to its dispositive provisions, while in the latter the validity of the instrument is the issue and its meaning and intent are wholly immaterial; in the former the will is an exhibit so that the court may study its composition, while in the latter it is an exhibit so that the jury may study its mechanical construction.

''* * *

''The scope of the inquiry in an action to construe a will is the nature and extent of the interests of the parties in the property. Thus, the court does not have power to determine the owner of real estate devised, or whether the testator was or was not seized of real property devised in fee simple, or to enter an order of distribution of a decedent's estate.''

In its journalized opinion, the court stated:

''Since the briefs filed by the attorneys for the defendant, Francis T. McCurdy, and co-administrators, w w a, Emmor D. Baily and Charles J. Waggoner, did not deal with the same matter on which the court feels it must base its decision, it might be well to delve into their reasoning, even though this part of the opinion be only dictum.''

This statement would seem to be an admission by the court that its decision was based on matter outside the proper scope of inquiry in construing the will.

From its opinion and judgment, it is obvious the court did

not construe the will but, rather, in an unusual journalized opinion seized upon the construction suit as a medium for exercising a jurisdiction it did not possess, namely, to determine the validity of the will, a question not in issue in this construction suit and a question twice determined heretofore, first by the Probate Court in its judgment admitting the will to probate after hearing objections based upon the same material to which the court adverted in reaching its conclusion here, and, second, by the verdict of a jury sustaining the will in the previous contest suit concurred in at the time by appellee through distinguished counsel as part of the compromise and settlement of all questions between the parties and as part of the consideration for the release executed by appellee, which this court now attempts to set aside.

Even if the court's attempt to construe an unprobated revoked codicil with the will could be justified, its conclusion that the first codicil revoked the will is completely wrong, since the codicil declares itself to be a codicil to the will in question, not a second will as found by the court, and throughout reaffirms the will and names a trustee "to carry out and execute the trusts set forth in my will as amended hereby."

These codicils, adverted to by the court in order to reach its conclusion, are not newly discovered writings but were left with the court at the time of the application to probate the will and, as shown by the record, were considered in all the proceedings that took place, rejected by the court and all parties as being of any testamentary effect, and never formally filed or offered for probate, and any consideration of such codicils is barred by the compromise and settlement heretofore had between the parties.

This court, therefore, takes the view that the application to admit the codicils to probate should be stricken from the files and the admission to probate of the same in an attempt to bolster the opinion of the court is, under the circumstances here, a complete nullity.

We would point out further that in assuming jurisdiction to pass upon the question of validity of the will the court, by its action, impeached its own order of probate of the will, impeached the judgment of the Common Pleas Court sustaining the validity of the will, ignored all rules of procedure on vaca-

tion and appeal, and has attempted to order distribution of the estate in an action to construe the will. This the court cannot do.

This court can only pose a query as to the reason for the court's action. The finding and judgment of the Probate Court is hereby reversed; the application to probate codicil No. 1 and codicil No. 2 is ordered stricken from the files, and the court will now proceed to construe the will and render the judgment the court below should have rendered.

We assume the validity of the will and seek to ascertain the intention of the testator, having in mind with regard to trusts of a charitable nature that "Ohio is committed to the universal doctrine that charitable trusts should be liberally construed to carry out the intention of the testator or grantor, and gifts for charitable purposes are upheld under circumstances where a private gift or trust might fail. Charitable trusts are to be construed so as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the form and manner pointed out by him cannot be followed." 9 Ohio Jurisprudence (2d), 125, Section 44.

The testator's first, main and all consuming intent is clearly, succinctly and specifically expressed in the paragraph headed First Purpose in the will. His second specific intent conditioned on the existence of surplus funds in excess of the funds necessary to accomplish the First Purpose is clearly and succinctly expressed in the paragraph headed "Fourth Purpose."

Did Rice P. Steddom create charitable trusts under his will?

In 2 Restatement of the Law, Trusts (2d), 210, Section 348, a charitable trust is defined: "A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose."

Section 349, page 213, Ib., states: "A charitable trust may be created by (a) a declaration by the owner of property that he holds it upon a charitable trust," and in the comment on clause (a) states: "(b) Declaration of trust. If the owner of property declares himself trustee of the property for charit-

able purposes, a charitable trust is created without a transfer of the title to the property.''

Section 370, page 251, Ib., states: ''Advancement of Education. A trust for the advancement of education is charitable.'' In comment ''a'' therein one of the methods of advancing education is set forth:

''* * * to establish scholarships or otherwise to assist students in acquiring education * * *.''

2 Perry on Trusts (7 Ed.), 1170, Section 687, defines a charitable trust as follows:

''* * * Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick, and the afflicted; and all gifts for the public convenience, benefit, utility, or ornament, in whatever manner the donors desire to have them applied.''

We determine that a charitable trust was created in each instance (First Purpose and Fourth Purpose), and that the intention to create such trusts can be ascertained from the will itself.

The Second Purpose expressed in the will is but an amplification of the First Purpose, and the Turtle Creek Meeting House and grounds a part of and included in the Turtle Creek Graveyard one and the same with it, part and parcel thereof, and intended by the testator to be perpetuated in his First Purpose.

Testator's expressed Third Purpose is incomplete in failing to state just how it is to be used as an adjunct of his Fourth Purpose. As expressed, the Third Purpose might well become impracticable or inexpedient of fulfillment. However, the right of the testator to dispose of his own property, not repugnant to law, as he sees fit is paramount and a broad discretion is vested in the trustees in executing the trust, and in Ohio the doctrine of deviation obtains so that the trustees would be permitted here to sell the land and buildings consisting of 42.54 acres and known as the Home Farm and add the proceeds to the corpus of the trust to be handled as other trust funds in producing income which may become a part of the surplus capable of fulfilling the Fourth Purpose herein.

Referring back to the First Purpose, at common law it probably would have been considered not charitable and therefore invalid as contrary to the rule against perpetuities. However, Ohio and many other states, by statute, have permitted the creation of such trusts. In Bogert, Trusts and Trustees (2 Ed.), Section 377, page 162, it is stated:

"* * * Evidently the feeling has been that respect for the dead is a sentiment desirable of cultivation in a civilized community, that the living will lead better lives if their ancestors, other relatives, and their friends are decently buried, their resting places marked, and their memories kept green by care and ornamentation of the graves and monuments. * * *"

Section 1721.12, Revised Code, provides:

"Every cemetery company or association may take, hold, possess, use, enjoy, and occupy such property of any kind as is given, granted, or devised to it for the purpose of building, repairing, maintaining, adorning, and beautifying fences, graves, vaults, mausoleums, monuments, walks, cemetery lots, drives, or avenues in its cemeteries, and may appropriate such property, or the proceeds thereof, to any of such purposes according to the terms of the trust for which it was given, granted, or devised."

From the above, it appears no longer open to question in Ohio that the First Purpose bequest is in the charitable class and allowed as not in violation of the rule against perpetuities.

We would further point out the proceedings by which the settlor acquired title to the lands upon which the Turtle Creek Graveyard and Meeting House are situated from the trustees of the Wilmington Yearly Meeting of Friends, Inc., being case No. 18027 in the Warren County Common Pleas Court—in the entry the transfer is ordered on condition he beautify, maintain, and keep in good and proper condition and repair, the premises in question. Also, the First Purpose of his will provides for any enlargement of the cemetery and for the benefit of succeeding generations. So it is abundantly clear that it is no mere private cemetery or lot dedicated to the purposes of the trust by the settlor in his lifetime and by the terms of his will.

A reading of the will leaves no doubt of the intention of the

testator to devote any surplus remaining in the specific charitable bequest for the First Purpose, together with the whole residuary income, to carry out his expressed Fourth Purpose.

In consideration of this case, the court has been guided by the very similar case of *Heinlein* v. *Elyria Savings & Trust Co., Exr.*, 75 Ohio App., 353, and the very complete discussion of this subject, together with the many citations therein.

The finding and judgment of the Probate Court that Rice P. Steddom died intestate, and ordering distribution of the balance of the assets of his estate to the defendant-appellee, Francis T. McCurdy, is hereby reversed. We determine that a valid charitable trust was created by the First Purpose expressed in the will and a valid charitable trust created by the Fourth Purpose expressed in the will.

In view of the holding herein by this court, the Charitable Trust Act of Ohio is applicable here and the Attorney General of Ohio a proper party to further proceedings herein.

The judgment is reversed and the cause remanded to the Probate Court for further proceedings according to law and this opinion.

*Judgment reversed.*

Hover, P. J., and Long, J., concur.