Edwin W. JOHNSON, Sr.

v.

**SOUTH BLUE HILL CEMETERY ASSOCIATION.**

Supreme Judicial Court of Maine.

June 27, 1966.

---

Harvard W. Blaisdell, Ellsworth, for plaintiff.

Herbert T. Silsby, II, Ellsworth, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

DUFRESNE, Justice.

On report. Daisy B. Johnson, late of Brooklyn, New York, died testate on January 28, 1956. Her will was duly proved and allowed initially in the State of New York, and subsequently in the State of Maine by proceedings taken before the Probate Court for the County of Hancock, the judge of said court ordering an authenticated copy thereof to be filed and recorded. 18 M.R.S.A. § 152, formerly R.S.1954, c. 154, § 15. The fourth clause of the Johnson will devised real estate situated in Blue Hill, in the County of Hancock, in this State, in manner as follows: "I give and bequeath to the South Bluehill Cemetery Association of South Bluehill, Maine, the sum of One Thousand ($1,000) Dollars for the care of my family plot in the South Bluehill Cemetery, South Bluehill, Maine, and I give, devise and bequeath to the said South Bluehill Cemetery

Association all of my right, title and interest in the parcel of real property located in Bluehill Falls, Maine, formerly owned by my mother, in the event said real property is owned by me at my death." Plaintiff brought the instant action in Superior Court seeking equitable relief, to wit, a judicial construction of the Johnson will under 14 M.R.S.A. § 6051(10) respecting said purported devise of the fourth clause thereof. Plaintiff claims that the devise to the South Blue Hill Cemetery Association failed, and that by reason of the lapse thereof, he is entitled to the same as the residuary beneficiary. Luques v. Inhabitants of Dresden, 77 Me. 186. Such interest asserted by him in good faith qualifies the plaintiff in bringing this action for construction. Only a judicial determination will resolve the genuine controversy which serious and reasonable doubts concerning the ownership of the reference property have raised between the plaintiff and the South Blue Hill Cemetery Association. See Haseltine v. Shepherd (1905) 99 Me. 495, 59 A. 1025.

It is conceded that the defendant, South Blue Hill Cemetery Association, is not a corporation. Its records show that it was organized as an association on November 16, 1912, and that officers for the ensuing year were chosen, to wit, a president, secretary-treasurer, superintendent of cemetery, and "a general committee for—as to lots", with 3 members elected. The only by-laws seemingly existing of record and adopted at the time of organization require that the Association shall have annual meetings and confer upon the general committee the power to adopt any by-laws deemed necessary for the benefit of said association. The president of the defendant Association, Mr. Leon Sylvester, related its historical background. His tenure of office as president dates back to 1932 with some conceded intermissions. He testified that at present the Association has a president, a vice president, a secretary-treasurer, a sexton and a work committee, but has no trustees. The 1912 or-

ganizational records do not show the purposes of the Association, but Mr. Sylvester testified without objection that they consisted of "trimming, mowing, seeding, painting a fence, grading off some old lot that there is no one to do anything for, maintaining the only drive around," i. e. "the maintenance and upkeep of the [town] cemetery." It further appears that the Inhabitants of the Town of Blue Hill do own the cemetery, which was used as a burying ground prior to 1800. Prior to the time when the Association organized for the purpose of providing proper care and upkeep, the town cemetery was maintained haphazardly by the people whose folks were buried therein. Although the application and payment for lots are made to the Association's sexton, the deed thereof comes from the Town and the purchase price goes to the Town Treasurer. The Association has maintained its organizational set-up with annual meetings and elections of officers, and has carried out its purposes since its organization in 1912 through donations from lot-owners, people who have relatives buried in the cemetery and other interested persons. The actual membership of the Association at the time of the testatrix's death is uncertain and cannot be ascertained with any reasonable degree of accuracy. No by-law exists which regulates or defines eligibility for membership. It seems that the purchase of a lot or a donation would cause the purchaser's or donor's name to go automatically on the membership list, just as his death would bring about automatic quit therefrom. It does not appear that any vote was ever taken to approve any member of the Association, nor is there any evidence indicating any formal assent on the part of any listed members to be such and the record is silent as to the identity of the members who participated in the last annual meeting, let alone any previous one. The whim of the officers seems to have been the only guideline for this roster. No criterion of membership being established, neither the purchase of a cemetery lot nor a donation to the Association without more

was sufficient to characterize such action as an assent on the part of the purchaser or donor to become a member of the Association. Thus, in the instant case, basic and necessary conditions upon which membership in the defendant Association could be predicated are wanting, and rights and liabilities as usually arise from membership in an unincorporated voluntary association cannot be left for their enforcement to such loose contacts as evidenced herein. The membership in the South Blue Hill Cemetery Association was not sufficiently definite and determinate. See, Cheney v. Goodwin, 88 Me. 563, 34 A. 420. The acceptance of, or intention by the person in question to accept, membership in an unincorporated association is necessary to make him a member of the organization. Tarbell & Whitham v. Gifford, 82 Vt. 222, 72 A. 921; Ross v. Ebert, 275 Wis. 523, 82 N.W.2d 315; 6 Am.Jur.2d, Associations and Clubs, § 18. See also, Beaman v. Whitney, 20 Me. 413. Defendant's uncertain membership will not permit the vesting of title to the devised property in its members. Such a rule which molds a deed to an unincorporated association into a conveyance to its members in cases of definite membership, is not applicable herein. See Byam v. Bickford, 140 Mass. 31, 2 N.E. 687; The Golden Rod, D.C. Maine, 197 F. 837.

■ However, even though the identity of its members may be uncertain, its by-laws antiquated, and its original organization has been loosely continued, its factual uninterrupted existence from 1912 to date is not disputed. It has effectively carried on the purposes for which it was organized and has provided for the care and upkeep of the town public cemetery. In the absence of written articles, constitution or by-laws, the government of unincorporated associations will be determined by common parliamentary rules, their powers may be ascertained by usage acquiesced in by the members thereof, and they may adopt any lawful means to accomplish their purposes. See, Kerr v. Hicks, 154 N.C. 265, 70 S.E. 468, 33 L.R.A.,N.S., 529; Hardy v. Carter,

(Tex.Civ.App.), 163 S.W. 1003; Oestereich v. Schneider, (Mo.App.), 187 S.W.2d 756; 6 Am.Jur.2d, Associations and Clubs, § 11; 7 C.J.S. Associations § 12 a. Voluntary unincorporated associations have inherent power to regulate their affairs so as to attain the objects and purposes for which they were constituted. Weinstock v. Ladisky, 197 Misc. 859, 98 N.Y.S.2d 85.

■■ Absent statutory authority, unincorporated associations including cemetery societies, have no such legal existence as will permit them to acquire and hold property in the associate name. See Pushor v. Hilton, 123 Me. 225, 122 A. 673; Byam v. Bickford, 140 Mass. 31, 2 N.E. 687; 6 Am. Jur. Associations and Clubs, § 13, and cases cited under no. 10; 5 C.J. Associations, § 32, and cases cited under no. 98; 7 C.J.S. Associations § 14a(1) and cases cited under no. 22. Cemetery associations may however acquire and hold property through trustees, and such trustees may accept and forever hold any donation or legacy for insuring proper care and attention to any burial lot or ground and the avenues thereof and the monuments thereon. Having accepted such donation or legacy, said trustee becomes bound to perform the duties appertaining to the trust as specified in the writing creating the same or, in default of such specification, as required by law, and *"as in cases of public charity."* [Emphasis supplied.] 13 M.R.S.A. § 1222, formerly R.S. 1954, c. 58, § 14. See also, 13 M.R.S.A. § 3062, formerly R.S.1954, c. 57, § 34.

Cemeteries, more commonly referred to as burying grounds in the early chapters of our state history, public or private, their care and upkeep have always been active concerns of our Legislature. Fencing of ancient or public burying grounds or yards, and the repair of cemetery fences, were ordered as early as 1828. See P.L.1828, c. 405, §§ 1 and 2. Under P.L.1829, c. 420, corporate charters could be obtained for the purpose of purchasing land for a burying ground. Under P.L.1834, c. 130, towns were authorized to raise money for the same

purpose. In each case, suitable fencing was ordered. Such lands were exempted from attachment and execution and their alienability restricted under P.L.1839, c. 392. Family burial plots, enclosed with substantial fences, were granted exemption from attachment and levy on execution and made inalienable so long as any person was interred therein by P.L.1854, c. 129. In Swasey v. American Bible Society, 57 Me. 523 (1869) our Court through Chief Justice Appleton had approved as a valid charitable trust a bequest to keep in suitable repair a specific family burying ground on the authority of Mellick v. The President and Guardians of the Asylum, 1 Jac. 180; Lloyd v. Lloyd, 10 Eng.L. & Eq. 139, the rationale being that a bequest for the repair of a family vault or tomb is a charitable use. Then, in Piper v. Moulton, 72 Me. 155, (1881) our Court retreated from the holding in Swasey, supra, and struck down as void for creating a perpetuity a bequest of one hundred dollars to the town in trust for the upkeep of *"my lot in the Piper burying ground,"* the court reasoning that the trust was not for any general purpose of public interest, and thus was not for any charitable purpose, but for a merely secular object. Within 2 years, our Legislature enacted P.L.1883, c. 117, (now 13 M.R.S.A. § 1222) empowering any city, town, cemetery corporation or trust company, to accept any conveyance of land for a private or family burying ground, together with fixtures suitable for its use or adornment as such, and to accept and *forever* hold any donation or legacy "for insuring proper care and attention to *any* burial lot or ground and the avenues thereof and the monuments thereon" and for treating such a trust as in cases of public charity. Such legislation effectively overruled the Piper decision, and added donations for private or public cemeteries to the statute of 43 Elizabeth, c. 4, relating to charitable uses. This English statute is part of the common law of this State. Preachers' Aid Society etc., v. Rich, 45 Me. 552; Estate of Clark, 131 Me. 105, at 109, 159 A. 500. See also, Going v. Emery, 16 Pick. (Mass) 107. Thus, our

Legislature has ordained that gifts for the care and upkeep of burial grounds be treated as cases of public charity so that the purposes of such trusts may be accomplished. Furthermore, the State policy tending to impress upon the use of land for burying grounds the common law concept of charitable uses, couched in these early enactments, has been firmly imbedded in our State fabric by the passage in 1937 of an act prohibiting the maintenance or operation of cemeteries for the purpose of private profit or gain, either directly or indirectly, to any director, officer or member of the cemetery association or other agency owning, maintaining or operating the same. P.L.1937, c. 99, § 5, now 13 M.R.S.A. § 1303.

The devise in the instant case cannot vest in the members of the South Blue Hill Cemetery Association because of the indefiniteness of its membership nor can it vest in the Association as such because the Association is not a legal entity capable of taking the same. Does it fail or lapse?

Initially, we must interpret the will of the testatrix to determine whether this devise to the South Blue Hill Cemetery Association was an outright gift to the Association or a devise in trust. That intent must be discovered from the four corners of the will read in the light of the surrounding existing circumstances and conditions. First Universalist Soc. of Bath v. Swett et al., 148 Me. 142, at 149, 90 A.2d 812. "Such evidence [of the surrounding circumstances of a testator] is admitted for the purpose of enabling the court to put itself in the position of the testator at the time of the signing of the will and thereby render it better able to interpret the language used in the will." First Portland National Bank v. Kaler-Vaill Memorial Home et al., 155 Me. 50, at 61, 151 A.2d 708, at 714.

Although the devise is to the South Blue Hill Cemetery Association and the will does not expressly limit the gift in trust nor for specific purposes, nevertheless it is part and parcel of the clause whereby the testatrix bequeathed to the same Association the sum of $1,000.00 "for the care of my family plot in the South Bluehill Cemetery, South Bluehill, Maine." Her intentions to appropriate the sum of $1,000.00 for the upkeep of the family burial lot in the South Blue Hill public cemetery indicate under the circumstances of the instant case, with unmistakable certainty her intention to dedicate at the same time the family real estate in Blue Hill Falls, Maine, for the upkeep of the South Blue Hill public cemetery through the South Blue Hill Cemetery Association. The evidence indicates that she was a member of the South Blue Hill Cemetery Association and that presumably she was cognizant of the fact that the sole purpose of the Association was to provide proper care and upkeep of the town's public cemetery. Her distant residence in Brooklyn, New York, and the failure of any showing to the effect that she was an active participant in the meetings and physical doings of the Association, the absence of any evidence that she maintained any intimate relations with any of its members or officers, all point to the fact that she did not wish to benefit the Association as such for any purpose whatsoever but that her only intent in making the devise to the Association of the family real estate in Blue Hill Falls, Maine, was to provide for the public cemetery the same care and upkeep that she was simultaneously providing for the family burial plot, which was located in the Blue Hill cemetery and in which by the eleventh clause of her will, she directed that her body be buried. She assumed that the Association was the best, if not the only, vehicle or conduit to be used if proper care and upkeep of the public cemetery were intended.

The very term cemetery association as used by the testatrix in her will, in connection with the services which she presumably knew the South Blue Hill Cemetery Association performed in providing solely for the care and upkeep of the town's pub-

lic cemetery, imported an organization for charitable purposes, and property given to it *eo nomine* in the absence of all declaration of trust or use must by necessary implication be intended to be given to promote the purposes for which the cemetery association was organized. Bates v. Schillinger, 128 Me. 14, at page 20, 145 A. 395. Cf. First Portland National Bank v. Kaler-Vaill Memorial Home et al., supra, where the Court said that the name "Kaler-Vaill Memorial Home" has no charitable significance, and we are unable to determine the general purposes of said Home. As stated in Zollmann, Charities, § 370, p. 251:

"What induces testators to execute gifts in favor of unincorporated charitable associations is unquestionably the charitable nature of the work which they are doing. There is every reason, therefore, why the court should hold such gifts, though they are absolute in form, to be charitable in fact. Extrinsic evidence may establish the charitable nature of such donations and is admissible to identify the legatee, and the identification of certain legatees necessarily characterizes legacies as charitable. The very name of certain organizations indicates clearly that their general purposes are charitable. Where the purposes of such societies under their present mode of existence give them no power to devote property to other than charitable uses, it is impossible for them, while they continue to be what they are, to expend their property for any other than charitable purposes. It follows that an absolute gift to them constitutes a charity. It is the design of the donor to consecrate his gift to the legitimate purposes of the society. His intent is as clearly manifested as it would be had he expressly declared that it should be applied to the very uses for which the association exists. A gift to a charitable or religious organization, without more, is, therefore, in trust for the purposes of the organization and ex vi termini is a donation to charity."

Root v. Morning View Cemetery Association, 174 Neb. 438, 118 N.W.2d 633 (1963); See, In re Halstead's Estate, 154 Neb. 31, 46 N.W.2d 779 (1951); In re Estate of Douglass, 94 Neb. 280, 143 N.W. 299, Ann. Cas.1914D, 447; In re Los Angeles County Pioneer Society, 40 Cal.2d 852, 257 P.2d 1, cert. den. Los Angeles County Pioneer Soc. v. Historical Soc., 346 U.S. 888, 74 S.Ct. 139, 98 L.Ed. 392, reh. den. 346 U.S. 928, 74 S.Ct. 306, 98 L.Ed. 420; In re Patterson's Estate, 139 Misc. 872, 249 N.Y.S. 441 (1931):

In Washburn v. Sewall & others, 9 Metc. (Mass.) 280 (1845), a bequest to the Concord Female Charitable Society, an unincorporated society, without further declaration of trust or purposes, was upheld as a good charitable donation for the ascertainable specific species of charity administered by the named association. See also, Burbank v. Whitney, 24 Pick. (Mass.) 146; Bartlett & others v. Nye & others, 4 Metc. (Mass.) 378.

The same result would have followed if the testatrix had devised the real estate directly to the South Bluehill Cemetery or simply for the care or upkeep thereof, which was her intention under the will, without any mention of the agency through which she wanted such benefits to be provided. See, Carlock v. Ladies Cemetery Association, 317 S.W.2d 432 (Mo.1958); Meeker et al. v. Lawrence et al., 203 Iowa 409, 212 N.W. 688 (1927).

The testatrix's intent was for the South Blue Hill Cemetery Association to take the devise for the sole purpose of providing proper care and upkeep of the town's public cemetery, which are the only purposes for which the Association was organized, and thus the objects for which such devise can be used are limited solely to charitable purposes. The care, maintenance and upkeep of public cemeteries is a public charity under our statutes relating to cemeteries or burying grounds and has been generally recognized as such by the great weight of the authorities. Chapman

v. Newell, 146 Iowa 415, 125 N.W. 324; Davie v. Rochester Cemetery Association, 91 N.H. 494, 23 A.2d 377; Newton v. Newton Burial Park, 326 Mo. 901, 34 S.W.2d 118; Bliss v. Linden Cemetery Association, 81 N.J.Eq. 394, 87 A. 224; Pope v. Alexander et al., 194 Tenn. 146, 250 S.W.2d 51; Baily v. McElroy, 120 Ohio App. 85, 195 N.E.2d 559; Bogert, Trusts & Trustees, (2nd Ed.) § 377, p. 158; Restatement of the Law, Trusts, § 374 h; Scott on Trusts, Vol. II, (2d Ed.) § 124.2 (10).

A charitable trust or public charity "in its legal sense comprises four principal divisions: trusts for the relief of poverty; trusts for the advancement of education; trusts for the advancement of religion; and trusts for other purposes beneficial to the community, not falling under any of the preceding heads." Commissioners for Special Purposes of Income Tax v. Pemsel, (1891) A.C. 531, 583.

■ "A charity in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." Estate of Clark, 131 Me. 105, at 109, 159 A. 500 at 501; Bills v. Pease, 116 Me. 98, at 100, 100 A. 146, L.R.A.1917D, 1060; Bates v. Schillinger, supra; First Portland National Bank v. Kaler-Vaill Memorial Home et al., supra.

■ "The essential features of a public charity, are, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite, unrestricted quality, that gives it its public character." City of Bangor v. Rising Virtue Lodge No. 10, Free and Accepted Masons, 73 Me. 428, at 434.

A bequest for the sole purpose of providing for the care and upkeep of a public cemetery is a public charity within the legal sense, as our Court did concede that under certain conditions a gift to a cemetery corporation may be regarded as charitable. See, In re Estate of Hill, 131 Me. 211, at 213, 160 A. 916, 83 A.L.R. 928.

The instant case is distinguishable from Merrill v. Hayden, 86 Me. 133, 29 A. 949; Brooks v. City of Belfast, 90 Me. 318, 38 A. 222; Bancroft v. Maine State Sanatorium Association, 119 Me. 56, 109 A. 585; First Universalist Soc. of Bath v. Swett et al., 148 Me. 142, 90 A.2d 812; First Portland National Bank v. Kaler-Vaill Memorial Home et al., supra. In Merrill, supra, the particular intended corporate beneficiary ceased to exist during the lifetime of the testator, and in Brooks, supra, the particular purpose to build a school within the geographical area of a specific school district became impossible of execution when during the lifetime of the testatrix school districts were abolished by law. In each of these 2 cases, the beneficiary having dropped out of existence, the intent of the donor to accomplish his specific purpose wholly through the agency of the respective beneficiary had to fail. In the instant case, the agency through whose services the testatrix sought to accomplish the objects of her bounty, is very much in existence and its sole impediment to carrying out the testatrix's purposes lies in the fact that it is not a corporate entity. The purposes of the gift, the care and upkeep of the town's public cemetery, being the paramount intent of the testatrix can be carried out without in any way thwarting her testamentary goal and it cannot be said that the purposes of the trust have failed. A similar distinction can be raised if the Kaler-Vaill case is compared, because in the latter case, the intended beneficiary never existed, either in corporate form or otherwise prior to the death of the testator. In Bancroft, supra, the testator created the trust fund "solely" for the benefit of the Sanatorium Association; he wanted thereby to guarantee its

existence as a private corporation. This primary purpose failed when the State of Maine took over and as a consequence thereof, the failure of the intended testamentary donee worked a failure of the trust and gift itself. In the instant case, the testatrix's primary intent of benefiting the town's public cemetery is severable from the agency intended by the testatrix to manage her devise in the furtherance of her charitable objectives. In First Universalist Soc. of Bath, supra, the gift was to a specific local church to use the income only for the support of that particular church, i. e., to continue its existence as such. The beneficiary ceased to function prior to the death of the testator, and the gift failed because the object of the gift could not be obtained.

When a trust is limited to a particular donee-beneficiary and that donee-beneficiary is the paramount reason for the gift and is not intended by the testator as a mere conduit for the application of the fund to charitable purposes, then a failure of the donee-beneficiary will cause the trust to fail. Bancroft v. Maine State Sanatorium Association, 119 Me. 56, at 68, 109 A. 585, supra. But, in the case of a simple gift to a voluntary unincorporated cemetery institution such as the South Blue Hill Cemetery Association in the instant case, which by testamentary intendment was selected as a mere trustee or conduit to manage the gift and see that it be applied to the charitable purposes with which the testatrix was concerned, then the gift or testamentary devise will not fail upon the failure of the donee.

In this particular case, the testamentary devise created a valid charitable trust, and it is possible and practical to carry out its specific purposes, which are to provide the proper care and upkeep of the town's public cemetery. There is no occasion to call into play the doctrine of cy pres. The appointment of a trustee to take the place of the South Blue Hill Cemetery Association, the testatrix's intended trustee, will solve the problem caused by the Association's inability to take and hold the devise in its name; a gift for charitable uses, otherwise valid will not fail for want of trustee as the court will provide equitable relief by appointing one. Webber Hospital Association v. McKenzie, 104 Me. 320, 327, 71 A. 1032; Bates v. Schillinger, 128 Me. 14, at 22, 145 A. 395. This principle is applicable not only to charitable trusts, but to any which are sought to be established for a proper purpose. Manufacturers National Bank v. Woodward, 138 Me. 70, 78, 21 A.2d 705.

We find no adequate reason for depriving the inhabitants of the Town of Blue Hill of the testatrix's intended charity to aid in the Town's maintenance of its public cemetery to the end that its dead may find true peace in an atmosphere of serene beauty where the living may come and pray without the shocking confrontation of tall weeds, slanted stones or dilapidated fences.

The case is remanded to the Superior Court for the appointment of a trustee in conformity with this opinion.

So ordered.